IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YAHYI ABDUL SHIHEED,          *

      Plaintiff,               *

v.                             *          Civil Action No. GLR-18-1906

JENIFER HARDING,[1]          *

      Defendant.            *

*****

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Jenifer Harding's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 20).[2] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

---

[1] The Court will direct the Clerk to amend the docket to reflect Defendant Jenifer Harding's correct surname.

[2] Also pending before the Court is Plaintiff Yahyi Abdul Shiheed's "Motion to DVD Filing Arrangement for Plaintiff Review" (ECF No. 25). In his Motion, Shiheed requests that he be provided an opportunity to review the DVD of the alleged excessive force incident at issue in this case that Harding filed with the Court. John White, Correctional Case Management Specialist II, avers that Shiheed was shown the video on December 6, 2018. (White Decl. ¶ 5, ECF No. 23-1). Accordingly, the Court will deny the Motion as moot.

In addition, pending is Shiheed's "Motion to Support Plaintiff's Opposition Against Defendant[']s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment" (ECF No. 26). The Court will construe Shiheed's Motion as a supplement to his Opposition and grant it.

# I.   BACKGROUND[3]

Shiheed is an inmate who is currently incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. (Compl. at 1).[4] He alleges that on April 22, 2018, after he asked the nurse who was passing out medication a medical question, Harding, a correctional officer, maced and assaulted him for no reason. (Id. at 3). Shiheed states that Harding's use of pepper spray was in violation of Division of Correction Directives regarding the use of force. (Id.). Shiheed further alleges that Harding gave other inmates his mail and instructed them to "F*** [him] up." (Id.). He pleads that Harding allowed inmates to do sexual favors for her in exchange for beating Shiheed up. (Id.). Shiheed also alleges that Harding filed a false ticket against him and that she is a constant threat to his health and safety. (Id.). Shiheed states that he filed a grievance regarding the facts alleged but that "[the Internal Investigation Division ("IID")] took [the] grievance case over and it was dismissed for procedural reasons." (Id. at 2). He further states that he filed an appeal. (Id.).

On May 8, 2018, Shiheed filed ARP NBCI-0704-18 alleging that Harding used excessive force against him on April 22, 2018. (Def.'s Mot. Dismiss Summ. J. ["Def.'s Mot."] Ex. 1 at 1, ECF No. 20-2). This ARP was dismissed on May 8, 2018 because it was

---

[3] Unless otherwise noted, the facts outlined here are set forth in Shiheed's Complaint, (ECF No. 1), and First Supplement, (ECF No. 4). To the extent the Court discusses facts that Shiheed does not allege in his Complaint and First Supplement, they are uncontroverted and the Court views them in the light most favorable to Shiheed. The Court will address additional facts when discussing applicable law.

[4] Citations to the Complaint refer to the pagination the Court's Case Management and Electronic Case Files ("CM/ECF") system assigned.

referred to the IID for investigation.[5] (Id. at 60). On September 6, 2018, Shiheed filed ARP

NBCI-1442-18 complaining that his family advised him that two pieces of mail they sent

to him were returned to them. (Id.). Shiheed was directed to resubmit the ARP with

additional information. (Id.). There is no indication in the record that he did so. (See id.).

On June 12, 2018, Shiheed sued Harding. (ECF No. 1).[6] Shiheed alleges a violation

of the Eighth Amendment to the U.S. Constitution against Harding for the use of excessive

force. (Compl. at 3). He seeks money damages and injunctive relief. (Id. at 3–4).

On July 16, 2018, Shiheed filed a Supplemental Complaint (the "First

Supplement"). (ECF No. 4). In the Supplement, Shiheed alleges that Harding continued to

make threats against him. (1st Suppl. at 1, ECF No. 4). On September 17, 2018, Shiheed

filed another Supplemental Complaint (the "Second Supplement"). (ECF No. 13). In the

Second Supplement, Shiheed alleges that unspecified mail was tampered with. (2d Suppl.

at 1, ECF No. 13). He further alleges that Harding threatened to interfere with his mail and

he opines that she is responsible for mail not being delivered to him.[7] (Id.).

---

[5] Shiheed filed ARPs on May 31, June 15, July 24 and 25, 2018, none of which concern any of the acts complained of in this case. (See Def.'s Mot. Ex. 1 at 1).

[6] On September 13, 2018, Shiheed filed what is styled as an "Amended Complaint." (ECF No. 12). In this filing, Shiheed requests that the Court correct the spelling of Harding's name. (Am. Compl. at 1, ECF No. 12). As addressed above, the Court will direct the Clerk to do so.

[7] Shiheed filed a Third Supplemental Complaint (the "Third Supplement") on October 31, 2018. (ECF No. 18). In the Third Supplement, Shiheed alleges that on September 27, 2018, a different correctional officer sexually assaulted him in retaliation for his lawsuit against Harding. (3d Suppl. Compl. at 1, ECF No. 18). Because Shiheed filed the Third Supplement after Harding was served, the allegations in the Third Supplement are not properly before the Court. Accordingly, the Court does not consider them here.

On November 27, 2018, Harding filed her Motion to Dismiss or, in the Alternative, for Summary Judgment.[8] (ECF No. 20). Shiheed filed an Opposition on December 10, 2018.[9] (ECF No. 24). To date, the Court has no record that Harding filed a Reply.

## II. DISCUSSION

### A. Conversion of Harding's Motion

Harding styles her Motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013)

---

[8] On December 6, 2018, Harding filed a Supplement to the Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 23). In the Supplement, Harding states that Shiheed was permitted to view a DVD of the incident alleged in the Complaint that was attached as Exhibit 3 to Harding's Motion. (Suppl. at 1, ECF No. 23).

[9] Shiheed filed a Supplement to the Complaint on January 22, 2019, (ECF No. 28), and a "Motion of Supplemental Complaint" on January 30, 2019, (ECF No. 29). Shiheed filed both after Harding filed her Motion. The Supplement and Motion detail new allegations of threats of harm and excessive use of force. These allegations, however, are not properly before the Court. Accordingly, the Court declines to consider them and will deny Shiheed's "Motion of Supplemental Complaint."

(quoting 5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. <u>See</u> <u>Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.</u>, 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. <u>See</u> <u>Moret v. Harvey</u>, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." <u>E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.</u>, 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" <u>Harrods Ltd. v. Sixty Internet Domain Names</u>, 302 F.3d 214, 244 (4th Cir. 2002) (quoting <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of

discovery." <u>Hamilton v. Mayor of Balt.</u>, 807 F.Supp.2d 331, 342 (D.Md. 2011) (quoting <u>Young v. UPS</u>, No. DKC-08-2586, 2011 WL 665321, at *20 (D.Md. Feb. 14, 2011)). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." <u>Ingle ex rel. Estate of Ingle v. Yelton</u>, 439 F.3d 191, 195 (4th Cir. 2006) (quoting <u>Strag v. Bd. of Trs., Craven Cmty. Coll.</u>, 55 F.3d 943, 953 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" <u>Harrods</u>, 302 F.3d at 244 (quoting <u>Evans</u>, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." <u>Id.</u> (quoting <u>Evans</u>, 80 F.3d at 961). Nevertheless, the Fourth Circuit has indicated that there are some limited instances in which summary judgment may be premature notwithstanding the non-movants' failure to file a Rule 56(d) affidavit. <u>See</u> <u>id.</u> A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[] as the functional equivalent of an affidavit." <u>Id.</u> at 245 (quoting <u>First Chicago Int'l v. United Exch. Co.</u>, 836 F.2d 1375, 1380–81 (D.C.Cir. 1988)).

Here, Shiheed was on notice that the Court might resolve Harding's Motion under Rule 56 because she styled her Motion in the alternative for summary judgment and

presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. Shiheed did not file a Rule 56(d) affidavit, nor does he otherwise assert that he needs discovery to properly address Harding's Motion. Accordingly, the Court will construe Harding's Motion as one for summary judgment.

**B.     Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation

or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**C.    Analysis**

Harding raises four arguments in her Motion: (1) failure to exhaust administrative remedies; (2) failure to sufficiently allege an excessive force claim; (3) Eleventh Amendment immunity; and (4) qualified immunity. The Court agrees that Shiheed has failed to exhaust his administrative remedies with regard to his mail tampering claim, threats claim, and retaliation claim and that he fails to create a genuine dispute of material fact as to his excessive force claim. The Court will, therefore, dismiss his Complaint

without prejudice as to the claims Shiheed failed to exhaust and grant summary judgment in Harding's favor on the excessive force claim.

### 1. Exhaustion of Administrative Remedies

#### a. The Prisoner Litigation Reform Act's Exhaustion Requirement

Shiheed's suit is subject to the provisions of the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e (2018), which provides, in pertinent part, that: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . , by a prisoner confined in any . . . prison . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[10]

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense that a defendant must plead and prove. See Jones v. Bock, 549 U.S. 199, 215–16 (2007); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.2d 674, 682 (4th Cir. 2005). Nevertheless, this Court cannot consider a claim that has not been exhausted. See Bock,

---

[10] For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see Chase v. Peay, 286 F.Supp.2d 523, 528 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004). Under Maryland law, the grievance process applies to a wide variety of claims that arise out of the conditions of confinement, including tort claims of assault and battery against prison officers, even if the grievance process cannot provide a comprehensive remedy for those claims. See McCullough v. Wittner, 552 A.2d 881 (Md. 1989).

549 U.S. at 220. In other words, exhaustion is mandatory. <u>Ross v. Blake</u>, 136 S.Ct. 1850, 1857 (2016). A federal district court, therefore, ordinarily may not excuse a failure to exhaust. <u>Id.</u> at 1856 (citing <u>Miller v. French</u>, 530 U.S. 327, 337 (2000)) (explaining that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion").

Ordinarily, an inmate must follow required procedural steps in order to exhaust his administrative remedies. <u>Moore v. Bennette</u>, 517 F.3d 717, 725, 729 (4th Cir. 2008). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." <u>Woodford v. Ngo</u>, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits).'" <u>Woodford</u>, 548 U.S. at 93 (quoting <u>Pozo v. McCaughtry</u>, 286 F.3d 1022, 1024 (7th Cir. 2002). But, the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." <u>Aquilar-Avellaveda v. Terrell</u>, 478 F.3d 1223, 1225 (10th Cir. 2007); <u>see</u> <u>Kaba v. Stepp</u>, 458 F.3d 678, 684 (7th Cir. 2006).

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121–22 (2d Cir. 2001). "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court . . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999); <u>see also</u> <u>Kitchen v. Ickes</u>, No. DKC-14-2022,

2015 WL 4378159, at *8 (D.Md. July 14, 2015); Blackburn v. S. Carolina, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009), aff'd, 404 F.App'x 810 (4th Cir. 2010).

The PLRA's exhaustion requirement serves several purposes. These purposes include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Bock, 549 U.S. at 219; see Moore, 517 F.3d at 725 (noting that exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). Exhaustion requires that prisoners pursue administrative grievances until they receive a final denial of their claims, appealing through all available stages in the administrative process. Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004); Gibbs v. Bureau of Prisons, 986 F.Supp. 941, 943–44 (D.Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); see also Booth v. Churner, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); Thomas v. Woolum, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); Pozo, 286 F.3d at 1024 (noting that a prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

An inmate need only exhaust "available" remedies. See 42 U.S.C. § 1997e(a). In Ross, the U.S. Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." 136 S.Ct. at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. Id. at 1856–57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" Id. at 1855. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725.

The Ross Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S.Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### b. Maryland's Administrative Procedures

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established the "administrative remedy procedure" or "ARP" for use by Maryland State prisoners for "inmate complaint resolution." See generally Md. Code Ann., Corr. Servs. ("CS"), §§ 10-201 et seq. (West 2019); Md. Code Regs. ("COMAR")

12.02.28.02(1) (defining ARP). This procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction [("DOC")]." CS § 10-206(a).

A "grievance" includes a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office [("IGO")] or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth under state law. See CS § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file an ARP with the IGO against any DOC official or employee. CS § 10-206(a). But if the prison has a grievance procedure that the IGO approved, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. See CS § 10-206(b). Maryland regulations create an established administrative remedy procedure process that applies to all Maryland prisons. COMAR 12.02.28.01 et seq. Therefore, Maryland inmates must follow and complete the ARP process before they may file a grievance with the IGO.

The ARP process consists of multiple steps. First, a prisoner is required to file an initial ARP with his facility's "managing official," COMAR 12.02.28.02(D)(1), which CS § 1-101(k) defines as "the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility" and COMAR 12.02.28.02(B)(14) defines as "the warden or other individual responsible for management of the correctional facility." In addition, the inmate must file the ARP request within thirty

days of the date on which the incident occurred, or within thirty days of the date the prisoner first gained knowledge of the incident or injury giving rise to the ARP, whichever is later. COMAR 12.02.28.09(B).

Second, if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame, the prisoner has thirty days to file an appeal to the Commissioner of Correction (the "Commissioner"). COMAR 12.02.28.14(B)(5).

Third, if the Commissioner denies a prisoner's appeal, the prisoner has thirty days to file a grievance with the IGO.[11] COMAR 12.02.28.18; CS § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial ARP request; the warden's response to that request; a copy of the ARP appeal filed with the Commissioner; and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the IGO concludes that the grievance is "wholly lacking in merit on its face," the IGO may dismiss it without a hearing." CS § 10-207(b)(1); see also COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. CS § 10-207(b)(2)(ii). However, if the IGO deems a hearing necessary, an Administrative Law Judge ("ALJ") with the Maryland Office of Administrative Hearings conducts the hearing. See CS § 10-208; COMAR 12.07.01.07–.08.

A decision of the ALJ denying all relief to the inmate is considered a final agency determination. CS § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). If the ALJ concludes

---

[11] If the Commissioner fails to respond, the grievant shall file their appeal within thirty days of the date the response was due. COMAR 12.07.01.05(B)(2).

that the inmate's complaint is wholly or partly meritorious, however, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the ALJ. See COMAR 12.07.01.10(B); CS § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his remedies. See CS § 10-210. But an inmate need not seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement. See, e.g., Pozo, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Importantly as to Shiheed's claims, the ARP process applies to allegations that correctional officers used excessive force. COMAR 12.02.28.04(A)(7). Where, as here, the ARP regarding an alleged use of excessive force was referred to the IID and procedurally dismissed, the facility ARP coordinator is required to notify the inmate that he may appeal the dismissal to the Commissioner using the following statement:

> The request is procedurally dismissed at this level. It has been determined that the subject matter of your Request is under investigation by the Department's Intelligence and Investigative Division under case number [insert case number here] and no further action will be taken under the Administrative Remedy Procedures at this level. You may appeal this decision to the Commissioner of Correction.

COMAR 12.02.28.11(B)(2)(d). The dismissal notice Harding submits with her Motion for Shiheed's ARP regarding the April 22, 2018 incident did not include this language. Rather, it simply advised Shiheed that the matter had been referred to the IID.[12]

### c.    Whether Shiheed Exhausted His Administrative Remedies

Here, it is clear that Shiheed failed to exhaust his administrative remedies before filing the instant Complaint as his claims of threats, retaliation, and mail tampering. With regard to Shiheed's claims of threats and retaliation there is no indication in the record that he even began the administrative remedy process. As to his claim regarding mail tampering, Shiheed initiated the ARP process on September 6, 2018, after filing this lawsuit, which alone is sufficient to dismiss this claim without prejudice. See Neal 267 F.3d at 121–22. In addition, despite initiating the administrative remedy process, Shiheed's mail-tampering ARP was dismissed because prison officials requested more information and Shiheed did not provide it. Thus, the Court concludes that Shiheed's Complaint must be dismissed without prejudice for failure to exhaust administrative remedies as to his claims of threats, retaliation, and mail tampering.

As to the excessive force claim, it is unclear from the record that Shiheed failed to exhaust available administrative remedies. Shiheed began the ARP process, but then apparently abandoned the process when the ARP was referred to the IID for investigation, and was therefore dismissed. But correctional staff failed to advise Shiheed, as required under COMAR, that despite the matter being referred to the IID, he could appeal the

---

[12] The dismissal notice also referred to an incorrect COMAR section. (See Defs.' Mot. Ex. 1 at 60) (citing COMAR 12.02.2.11.B(h)).

dismissal. Based on the present record before, the Court cannot say that Shiheed's efforts to exhaust his administrative remedies as to his excessive force claim were not thwarted. See Ross, 136 S.Ct. at 1860. Accordingly, the Court will consider the merits of this claim.

### 2. Excessive Force Claim

Assuming Shiheed's failure to exhaust his administrative remedies as to his excessive force claim can be excused, his claim would still fail. In determining whether prison officials used excessive force, the Court considers whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U. S. 1, 6–7 (1992). The Court must look at: (1) the need for application of force; (2) the relationship between that need and the amount of force applied; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and (5) any efforts made to temper the severity of the response. Whitley v. Albers, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. Wilkins v. Gaddy, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if prison officials applied force maliciously and sadistically, they cannot avoid liability simply because the prisoner had the good fortune to escape serious harm. Id. at 38.

Prison officials may violate the Eighth Amendment when they "use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." Iko v. Shreve, 535 F.3d 225, 240 (4th Cir. 2008) (quoting Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996). But, the use of pepper spray does not amount

to "per se . . . cruel and unusual punishment," <u>McCargo v. Mister</u>, 462 F.Supp. 813, 818 (D.Md. 1978), and is permissible when used to control a recalcitrant inmate, <u>Williams</u>, 77 F.3d at 763. The focus of the analysis for a claim of excessive use of force, as noted, is on the subjective intent of the defendant, i.e., whether the defendant acted with a sufficiently culpable state of mind. <u>See</u> <u>Iko</u>, 535 F.3d at 238 (4th Cir. 2008) (denying qualified immunity to correctional officer who deployed chemical agent into inmate's cell after inmate complied with orders, did not react violently, and officer failed to take steps to ameliorate effects of chemical agent).

A subjective intent to cause harm is supported where an officer uses more than a reasonable amount of a chemical agent to restore discipline. <u>See, e.g.</u>, <u>Furnace v. Sullivan</u>, 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in); <u>Lawrence v. Bowersox</u>, 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); <u>DeSpain v. Uphoff</u>, 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier). Under some circumstances, however, multiple applications of a chemical agents have been found reasonable where an inmate repeatedly ignores orders from a correctional officer. <u>See</u> <u>Williams</u>, 77 F.3d at 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); <u>Jackson v. Morgan</u>, 19 F.App'x 97, 102 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell); <u>Norris v. Detrick</u>, 918 F.Supp. 977, 984 (N.D.W.Va. 1996) (upholding use of two blasts of pepper spray when

inmate refused to return to his cell during lockdown). Use of chemical agents is reasonable when an officer is attempting to maintain order and discipline in the institution. Santiago v. Walls, 599 F.3d 749, 757 (7th Cir. 2010) (determining that the Eighth Amendment was not violated where prison officials used pepper spray to break up inmate fight); Combs v. Wilkinson, 315 F.3d 548, 558 (6th Cir. 2002) (holding that the use of pepper spray during a prison riot was appropriate).

In this case, Harding avers that on April 22, 2018, she was working as an escort officer on Shiheed's tier, escorting the nurse who was distributing medication. (Harding Decl. ¶ 8, ECF No. 20-3) Shiheed attempted to grab Harding with one hand while holding a milk carton in the other. (Id.; see also Def.'s Mot. Ex. 1 at 17–19 (Notice of Inmate Rule Violation); Id. at 35 (Use of Force Report)). Harding stepped away from Shiheed and applied pepper spray in order to avoid an assault. (Harding Decl. ¶ 8). As Harding moved away from Shiheed he threw the milk carton at her, hitting her right shoulder. (Id. ¶ 9; see also Def.'s Mot. Ex. 4, ECF No. 20-4 (filed separately) (Tier Video beginning at 7:48)). When Harding tried to close the security slot, Shiheed held the slot open. (Harding Decl. ¶ 10). Shiheed then reached through the slot with a 30" stack of milk cartons inside of a sock and struck Harding in the right shoulder. (Id. ¶ 11; see also Def.'s Mot. Ex. 1 at 56 (Photograph of Weapon); Tier Video). Other staff were informed of the incident, and they responded to Shiheed's cell. (Harding Decl. ¶ 12; Tier Video). They were able to use de-escalation techniques to handcuff Shiheed. (Harding Decl. ¶ 12; Tier Video). Shiheed was taken to the medical department where he declined a decontamination shower and reported no injuries. (Def.'s Mot. Ex. 1 at 48 (Apr. 22, 2018 Medical Record)).

Shiheed does not deny that he refused to close his door slot or that he struck Harding with a milk carton and then with a sock filled with milk cartons. The record evidence is clear that Shiheed failed to comply with orders to close his slot and then assaulted Harding. His refusal to comply with direct orders coupled with his assault upon Harding were sufficient cause for the use of pepper spray against him. Williams, 77 F.3d at 763; Jackson, 19 F.App'x at 102. Harding's use of a short burst of pepper spray was a reasonable, tempered response in light of the undisputed dangerous circumstances Shiheed presented. Norris, 918 F.Supp. at 984; Williams, 77 F.3d at 763. Further, the record reflects that the amount of pepper spray deployed was minimal based on a review of the video of the altercation, Shiheed's declination of a decontamination shower, and his reporting to medical that he had no injuries.

In sum, the Court concludes that Shiheed fails to create a genuine dispute of material fact as to his excessive force claim. Thus, Harding is entitled to summary judgment on that claim. Accordingly, the Court will grant Harding's Motion as to Shiheed's excessive force claim.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Harding's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment (ECF No. 20) and enter

judgment in Harding's favor on Shiheed's excessive force claim. The Complaint is dismissed without prejudice for failure to exhaust administrative remedies as to Shiheed's other claims. A separate Order follows.

Entered this 19th day of June, 2019.

                                               _____/s/_____

                                               George L. Russell, III
                                               United States District Judge